IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| **CONSULTATIVE GENOMICS, LLC, and ALPHA GENOMIX LABORATORIES, INC.** | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| **v.** | ) ) ) | **Civil Action No.** 1-22-cv-120 |
| **SHEA SPRUILL, HEALIX PATHOLOGY, LLP, HEALIX PATHOLOGY, LLC, and HEALIX HOLDINGS, LLC** | ) ) ) ) ) | |
| *Defendants.* | ) ) | |

## COMPLAINT

**COME NOW** Consultative Genomics, LLC, and Alpha Genomics, Inc., collectively "Plaintiffs" in the above styled action, and hereby file this Complaint as follows:

## PARTIES

1.      Plaintiff Consultative Genomics, LLC ("the Company"), is a Louisiana LLC, and its members reside in various states. During the relevant time, the company operated out of several locations, with its principal location of business operations being within the Southern District of Georgia.

2.      Plaintiff Alpha Genomix Laboratories, Inc. ("Alpha Genomix") is a Georgia Corporation.

3.      Defendant Shea Spruill is a resident of the State of Texas.

4.     Defendant Healix Pathology, LLP, is a limited liability partnership with a principal place of business in Texas, organized under the laws of Wyoming, and controlled by Spruill, Kevin Rosenblatt, Peter Bryant-Greenwood, and others who conduct business in various jurisdictions, including Georgia.

5.     Defendant Healix Pathology, LLC, is a limited liability company with a principal place of business in Texas, organized under the laws of Wyoming, and controlled by Spruill and others.

6.     Defendant Healix Holdings LLC, is a limited liability company with a principal place of business in Texas, organized under the laws of Wyoming, and controlled by Spruill and others.

## JURISDICTION AND VENUE

7.     Venue is proper under 28 U.S.C. § 1390, as the event(s) and occurrence(s) that make the basis of this action occurred in part in the Southern District of Georgia.

8.     Defendants have sought and seek to do business within the State of Georgia and have purposefully availed themselves of the benefits of doing business in the State of Georgia.

9.     The amount in controversy in this action exceeds the sum of $75,000.00 exclusive of interests and costs.

10.     There being a diversity of citizenship between Plaintiffs and Defendants, and because the amount in controversy in this action exceeds the sum of $75,000.00 exclusive of interest and costs, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

## FACTUAL BACKGROUND

11.    Shea Spruill ("Spruill"), together with Dr. Kevin Rosenblatt ("Rosenblatt") and Dr. Peter Bryant-Greenwood ("Bryant-Greenwood"), and others participated in a scheme to defraud Plaintiffs, siphon off valuable assets and property, and use those fraudulently obtained resources to set up a competing business.

12.    The competing business operates under the general brand of "Healix," which includes the various Healix enterprises, together with other entities known and unknown, which Spruill, Rosenblatt, Bryant-Greenwood and others operate without regard to strict compliance of corporate formalities and as alter egos of the various corporate forms.

13.    Defendants, through a concerted scheme involving deception, subterfuge, breach of their fiduciary duties, and outright theft have caused significant losses, cumulatively estimated to be well in excess of $1 million, and irreparable harm to Plaintiffs.

14.    Plaintiffs, as detailed below, seek relief against Defendants as set forth below.

### A.    Introduction to Rosenblatt and Bryant-Greenwood

15.    In or about late 2017, Bryant-Greenwood was introduced to Don O'Neill, Peter Guerrero, and others at National Jewish Health in Denver, Colorado.

16.    Bryant-Greenwood then arranged for the introduction and introductory calls between Rosenblatt and Dustin Ward, Peter Guerrero, and Don O'Neill.

17.     Bryant-Greenwood and Rosenblatt worked at Critical Health Management ("CHM"), which was based in Dallas, Texas, and its affiliated laboratories at various locations in the Southwest until in or around July 2018. Bryant-Greenwood and Rosenblatt decided to pursue additional opportunities.

18.     At that time, Consultative Genomics, PLLC was a Texas professional limited liability company practicing molecular pathology in the State of Texas and the State of Colorado.

**B.     Creation of Consultative Genomics, LLC.**

19.     Following discussions between the parties, Rosenblatt, Bryant-Greenwood, Dr. Shaver, and others agreed to join forces in a new business venture.

20.     In terms of corporate formation, all agreed to re-domicile Consultative Genomics, PLLC (the Texas limited liability company) into Louisiana, to allow for multiple members and compliance with corporate practice of medicine doctrine in Texas.

21.     Specifically, corporate organization documents were drafted by counsel and filed with the Louisiana Secretary of State to re-domicile Consultative Genomics, PLLC (the Texas limited liability company) into Consultative Genomics, LLC (the Louisiana limited liability company).

22.     As part of this reorganization, Consultative Genomics, PLLC (the Texas professional limited liability company) filed its final tax return, signed by Rosenblatt.

23.     On or around December 18, 2018, Consultative Genomics, LLC (the Louisiana limited liability company) signed a "Share Exchange Agreement" converting all outstanding shares of the Georgia clinical laboratory Alpha Genomics,

Inc. (d/b/a Alpha Genomix) into shares of Consultative Genomics, LLC (the Louisiana limited liability company).

24.     Alpha Genomix's assets, which included several items of expensive laboratory equipment and other items, were at all times owned by Alpha Genomix.

25.     Rosenblatt signed a revocable proxy to execute the Share Exchange Agreement and required ancillary documentation.

26.     On or about October 23, 2019, Rosenblatt re-signed the Consultative Genomics, LLC operating agreement to reaffirm the transaction.

27.     In the re-domiciled LLC, members appointed a Board of Managers to oversee and manage the LLC.

28.     Those appointments were as follows: Rosenblatt, Bryant-Greenwood, Dr. Hani El-Shawa, Richard Sassnett, III, Dr. Ellen Shaver, Dr. Joseph Shaver, and Hunter Smith.

29.     Rosenblatt and Bryant-Greenwood were members of the Board of Managers and employees of Consultative Genomics, LLC.

**C.     Operations of Consultative Genomics, LLC.**

30.     After organization, Consultative Genomics, LLC (the "Company"), operated as a Louisiana limited liability company, with regular board meetings.

31.     Rosenblatt and Bryant-Greenwood participated in these board meetings.

32.     Rosenblatt and Bryant-Greenwood worked as employees and received compensation for their services.

33.     Rosenblatt operated the Houston, Texas location as an officer and employee.

34.     This location was paid for with the revenue of the Company. Specifically, rent, utilities, payroll, salaries (including to Rosenblatt, Bryant-Greenwood, and Robyn Rosenblatt), as well as ancillary expenses were paid from the operating accounts of the Company.

35.     On January 22, 2020, the Board of Managers of the Company held a formal meeting to discuss the relocation of the laboratory operations from Atlanta, Georgia, to Houston, Texas. All board members were present on the call, including Bryant-Greenwood and Rosenblatt.

36.     On January 28, 2020, the Board of Managers formally voted to relocate expensive equipment belonging to Alpha Genomix from Atlanta, Georgia to Bellaire, Texas – the location supervised by Rosenblatt.

37.     On February 3, 2020, Dr. Hani El-Shawa, as manager and COO of Consultative Genomics, LLC, executed a lease for the premises located at 4800 Fournace Place, Suite E110, Bellaire, Texas 77401 (the "Bellaire Lease").

38.     The sole tenant on the Bellaire Lease was Consultative Genomics, LLC (the Louisiana limited liability company).

39.     On February 25, 2020, Alpha Genomix's equipment arrived at the Bellaire Lease location.

40.     From December 2018 through July 2020, Rosenblatt, Robyn Rosenblatt, and Bryant-Greenwood received compensation from the Company.

**D.     Introduction to Spruill and "Healix"**

41.     Defendant Shea Spruill purports to be a sophisticated and experienced professional with an extensive background in operations of laboratories.

42.     Spruill represented himself to Plaintiffs as being experienced in overseeing all operations of the laboratory, including technical and non-technical aspects of the laboratory, billing, developing and maintaining vendor relationships, and compliance.

43.     Spruill represented to Plaintiffs that he was affiliated with "Healix, LLC," a Louisiana limited liability company, with a business address of 103 Woodlake Lane, Lafayette, Louisiana.

44.     Spruill represented himself to be a "Partner" of that LLC.

45.     On or about June 2019, the Company and Spruill entered into negotiations to engage in a potential business relationship.

46.     As part of this agreement, the Company agreed to discuss confidential information about its business operations to Spruill in a "Confidentiality and Non-Disclosure Agreement," which was signed by Spruill on or about June 11, 2019 and sent to a representation of the Company.

47.     This information included proprietary and trade secret information of value to the Company.

48.     Among other terms, Spruill agreed that he would:

        a.     Prevent disclosure of the information shared;

        b.     Protect the confidentiality of such information;

7

    c.     Refrain from using the information either directly or indirectly, except for the provision of engaging in evaluation and discussion regarding the proposed transaction; and

    d.     Return or destroy the information as requested.

**E.   The Scheme**

49.    Beginning no later than June 2019, Spruill, assisted by Rosenblatt, Bryant-Greenwood, and others, engaged in a concerted scheme to misappropriate confidential information from the Company and its employees. Over a number of months, the conspirators fraudulently obtained and converted assets and intellectual property of the Company, induced individuals to breach their agreements with the Company, and opened a competing operation in the very same building as the Company.

50.    Spruill induced the Company to provide valuable and confidential information by specifically representing he was a "partner" in a company called Healix LLC that sought to do business with the Company.

51.    These representations were false.

52.    According to Spruill's biography, Spruill left "Lab Trust" in April 2018.

53.    Following this position, Spruill joined eHealth Management Solutions, LLC. He left in December 2018.

54.    While also working for eHealth Management Solutions, LLC, Spruill owned a laboratory consulting company, Texacology, LLC.

55.    In March 2019, Spruill founded EVE Health, a laboratory information system that provides SaaS modular solution sets to labs.

56.    Spruill founded Healix Pathology LLP in October 2019.

57.    Despite representations to the Company about the "Partner" role he had, Spruill's biography makes no mention of his "Partner" position with "Healix LLC".

58.    This is for good reason. "Healix LLC" was a limited liability company in Louisiana founded in 2009, located in Baton Rouge, LA. "Healix LLC" was inactive at the time Spruill purportedly represented to be a "Partner" of the company.

59.    Healix LLC is not and never has been affiliated with Healix Pathology LLP.

60.    Amy Fransen was the only officer of Healix LLC. Spruill has no affiliation with "Healix LLC".

61.    After obtaining the Company's confidential information, including detailed information about its business model, strategies, and intellectual property, Defendant Spruill joined forces with Guerrero upon his departure from the Company.

62.    After his departure from the Company, Guerrero became the Chief Strategy Officer for Spruill at Healix Pathology, LLP.

63.    Spruill had various titles; however, during late 2019 and early 2020, he exercised significant managerial control and day-to-day decision making at Healix Pathology, LLP.

64.    Within a short time, Spruill induced additional employees of the Company to take actions to the benefit of Healix Pathology LLP and to the detriment of the Company.

65.     Despite the fact that they were still employees and directors, Rosenblatt and Bryant-Greenwood began a formal affiliation with Spruill and Healix.

66.     Specifically, no later than December 2019, Bryant-Greenwood began forwarding the Company's information to personal and non-Company email accounts, including emails accounts with the domain @healixpathology.com.

67.     Rosenblatt, similarly, began obtaining Company information and sending it to his Healix email address shortly thereafter.

68.     As an illustration of this role, Rosenblatt and Bryant-Greenwood received and began using email accounts for Healix, while still employed by and serving as directors on the Board with the Company.

69.     Rosenblatt and Bryant-Greenwood never disclosed this to the Company.

70.     Over the following months, Rosenblatt and Bryant-Greenwood continued to maintain a façade of employment, participated in Board meetings, and intended to influence decisions made on behalf of the Company.

71.     Among other decisions, Rosenblatt and Bryant-Greenwood used the Company's resources to acquire materials in order to validate and develop tests for COVID-19.

72.     Rosenblatt and Bryant-Greenwood also pushed for the Board to approve a transfer of nearly $1 million of laboratory equipment from Georgia to Texas.

73.     Consultative Genomics, LLC, in fact, arranged for the acquisition of the materials needed to validate the COVID-19 testing, as well as the transfer of the equipment owned by Alpha Genomix.

74.     Unbeknownst to Dr. Shaver and other members of Consultative Genomics, LLC, Spruill, Rosenblatt, and Bryant-Greenwood continued to push forward their efforts to launch Healix with Spruill and others known and unknown.

**F.      Defendants Carry Out Their Scheme.**

75.     At some point between May and July 2020, Rosenblatt, Bryant-Greenwood, and others determined the time was right to move their scheme into the next phase.

76.     Spruill and Healix, including agents of Healix (Rosenblatt, Bryant-Greenwood, and others) played an active role in the planning and execution of this scheme.

77.     On June 25, 2020, Hunter Smith, the Chief Financial Officer for the Company, discovered that he no longer had access to the Company's account maintained at Chase Bank, NA.

78.     The only other users with access who could have effected this change were Robyn Rosenblatt or Rosenblatt.

79.     From June 25 through July 7, Dr. Ellen Shaver made multiple and increasingly concerned attempts to communicate with Rosenblatt.

80.     She received no response from Rosenblatt.

81.     On July 7, 2020, the Board of Managers received a formal notice for a Board meeting to discuss, among other issues, why the Company's Chief Financial Officer was cut off from accessing the Chase Bank account.

82.     On July 8, 2020, Rosenblatt and Bryant-Greenwood resigned from the Board of Managers for the Company.

83.     Rosenblatt also submitted an application for a loan from the Small Business Administration using the Company's information, a false address, and other materially misleading information.

84.     As Spruill and Healix were well aware, Rosenblatt and Bryant-Greenwood were members of the Board and owed fiduciary duties to Consultative Genomics, LLC, as an entity, and to Dr. Shaver, as a fellow shareholder.

85.     On July 9, 2020, the Board of Managers sent Don O'Neill, a consultant to the Board, to the Consultative Genomics, LLC location in Bellaire, Texas, to act on their behalf.

86.     On July 9, 2020, pursuant to a formal resolution by the remaining Board members, Rosenblatt, Bryant-Greenwood, Robyn Rosenblatt, and Jaclyn Meyer were all terminated as employees of the Company.

87.     The Board resolutions reflecting the terminations, as well as copies of the email from Dr. Rosenblatt of his resignation from the Board of Managers, were provided to SLS West Loop, LP as the landlord ("Landlord") of the Company's Bellaire, Texas location.

88.     On July 9, 2020, Rosenblatt, Bryant-Greenwood, Robyn Rosenblatt, and Jaclyn Meyer were all informed that the Company revoked any authorization to enter premises leased to the Company.

89.     O'Neill also called the Bellaire Police Department and filed a report to request that, should these employees attempt to enter the premises, they should be considered trespassers.

90.     Rosenblatt, Bryant-Greenwood, and Robyn Rosenblatt, or anyone else acting at their direction, had no legal authority to enter the rented premises as of July 9, 2020, or at any point in the future.

91.     Because of the specific concerns Rosenblatt and others posed to their property, O'Neill also, on behalf of and at the direction of the Board of Managers, requested that Landlord change the digital locks and provide new keys to Dr. El-Shawa.

92.     Unbeknownst to Dr. Shaver and the Company, Michael Roofian, an attorney licensed in California, with Rosenblatt and Bryant-Greenwood copied, made a series of false statements to the landlord in order to induce the Landlord into refusing Consultative Genomics, LLC's—the only tenant listed on the lease—requests.

93.     Also unbeknownst to Dr. Shaver and the Company, Rosenblatt and his co-conspirators had already secured another lease—in the same building as Consultative Genomics, LLC.

94.     Spruill, Healix, and others operated Healix and its competing business out of this same location.

95.     Following up on the prior notification of termination, on July 10, 2020, Dr. Ellen Shaver, on behalf of the Board of Managers of the Company, again notified Rosenblatt, Bryant-Greenwood and Robyn Rosenblatt in writing of the decision to terminate their employment.

96.     After the premises were secured and requests made to the Landlord, O'Neill returned to Georgia.

97.     At some point between July 9, 2020, and August 9, 2020, all fixtures, equipment, furniture, consumables, and office supplies were unlawfully removed from the Bellaire Lease property of the Company.

98.     The fixtures, equipment, furniture, consumables, and office supplies were removed at the express direction of Rosenblatt. He was aided and abetted by others in this effort who removed the equipment to Healix's business location.

99.     Unbeknownst to the Company or its shareholders, prior to their resignations on July 8, 2020, Healix, Rosenblatt, Bryant-Greenwood, and others agreed and took additional overt steps to aid their competing businesses, including but not limited to:

    a.     Converting and appropriating money, property, and assets belonging to the Company and its affiliates;

    b.     Diverting or causing to be divert business from the Company to Healix and others; and

    c.     Making or causing to be made false representations to injure the Company.

100.    On or about August 9, 2020, the Company filed another report with the Bellaire Police Department.

101.    This time, however, the report led to an investigation into whether Rosenblatt, Bryant-Greenwood, and others stole equipment from the company.

102.    Following the theft of equipment, intellectual property, computers, and other assets of the Company, Rosenblatt, Bryant-Greenwood, and Spruill re-branded

Healix as a physician-owned and operated reference laboratory that purported to provide its clients with access to a testing solution for COVID-19 infection identification and exposure monitoring.

103.   The only two physicians listed on Healix's website are Rosenblatt and Bryant-Greenwood.

104.   Spruill purports to serve as the Chief Operating Officer.

105.   Healix, upon information and belief, continues to operate out of the same building where the Company's office was located in Bellaire, Texas.

106.   In October 2020, Healix represented to outside partners that it was performing 100,000 COVID-19 surveillance tests per day.

## CAUSES OF ACTION

### COUNT ONE: FRAUD (Spruill)

107.   Plaintiffs incorporate by reference Paragraphs 1 through 106.

108.   Spruill, as set forth previously, made or caused to be made false representations and concealed material facts in order to obtain property properly held by the Company, including, for example, money, rights, and property which rightfully belonged to Plaintiffs, including, but not limited to the fact that Spruill was a "Partner" of "Healix, LLC," a Louisiana limited liability company in or about June 2019.

109.   These false representations and concealments were reasonably calculated to deceive Plaintiffs.

110.   Spruill made these false representations and concealments with the intent to deceive.

111.    These false representations and concealments did in fact deceive Plaintiffs.

112.    Plaintiffs reasonably relied upon Defendants' false representations, including representations that also omitted material information.

113.    These false representations and concealments resulted in damage to the Plaintiffs.

### COUNT TWO: CONSTRUCTIVE FRAUD (Spruill and Healix)

114.    Plaintiffs incorporate by reference Paragraphs 1 through 106.

115.    Defendants, as set forth previously, engaged in acts of omission and commission.

116.    These acts and omissions were contrary to legal or equitable duty, trust, or confidence justly reposed by the Company in Defendants.

117.    The acts and omissions were contrary to good conscience and operated to the injury of Plaintiffs.

### COUNT THREE: NEGLIGENT MISREPRESENTATION (Spruill)

118.    Plaintiffs incorporate by reference Paragraphs 1 through 106.

119.    Defendants made representations in the course of their business, or in a transaction in which they had a pecuniary interest.

120.    Defendants supplied false information for the guidance of others in their business, including that they held a Clinical Laboratory Improvement Amendments ("CLIA") certification.

121.    Defendants did not exercise reasonable care or competence in obtaining or communicating information.

122.    Plaintiffs suffered pecuniary loss by justifiably relying on the representations.

123.    Defendants' negligent misrepresentations proximately caused the Company's and its shareholders' injuries.

124.    Plaintiffs suffered injury as a result of Defendants' tortious actions.

**COUNT FOUR: CONVERSION (Spruill and Healix)**

125.    Plaintiffs incorporate by reference Paragraphs 1 through 106.

126.    The Company owned, had legal possession of, or was entitled to possession of the certain property, including equipment, cash, intellectual property, and more.

127.    The property was personal property.

128.    Defendants assumed and exercised wrongful dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Plaintiffs' rights.

129.    Defendants refused to return the property.

130.    Plaintiffs suffered injury as a result of Defendants' tortious actions.

**COUNT FIVE: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS, BUSINESS RELATIONS, AND POTENTIAL BUSINESS RELATIONS (Spruill and Healix)**

131.    Plaintiffs incorporate by reference Paragraphs 1 through 106.

132.    Defendants engaged in improper action or wrongful conduct without privilege.

133.    Defendants acted purposely and with malice with the intent to injure.

134.   Defendants induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the Company.

135.   Defendants' tortious conduct proximately caused damage to the Company.

### COUNT SIX: TRESPASS (Healix)

136.   Plaintiffs incorporate by reference Paragraphs 1 through 106.

137.   Plaintiffs had a lawful right to possess real property at the Bellaire Lease location.

138.   Rosenblatt and others entered onto property leased by Consultative Genomics without Consultative Genomics' consent or authorization.

139.   The entry onto the Bellaire Lease location was physical, intentional, voluntary, and unauthorized.

140.   To the contrary, Rosenblatt and Bryant-Greenwood were specifically informed that Consultative Genomics – the sole leaseholder – specifically banned them from reentering its facility.

141.   Defendants' trespass caused injury to Plaintiffs' right of possession.

### COUNT SEVEN: CIVIL CONSPIRACY (Spruill, and Healix)

142.   Plaintiffs incorporate by reference Paragraphs 1 through 106.

143.   Two or more persons, including Spruill, Rosenblatt, and Bryant-Greenwood, as well as others, sought to accomplish a tortious object or course of action – that is, to violate their fiduciary duties and employment agreements with

the Company, to trespass on the Company's property, and to convert unlawfully and steal the Company and Alpha Genomix's property.

144.   Spruill, Guerrero, and others reached a meeting of the minds on the object or course of action.

145.   One or more unlawful, overt acts were taken in pursuance of the object or course of action, including, but not limited to:

a.   establishing and promoting a competing business with misappropriated assets, including intellectual property;

b.   providing assistance, information, and resources to competing businesses, including side-businesses operating out of the same property as the Company;

c.   forwarding of the Company's emails to personal or non-Company email accounts to advance the personal objective(s) of the co-conspirators, to the detriment of the Company;

d.   converting equipment owned by Alpha Genomix from the Company's premises;

e.   unlawfully and without permission entering the Company's premises following termination;

f.   withdrawing or causing to be withdrawn money from bank accounts belonging to the Company;

g.   interfering with business relations and potential relations of the Company; and

h.   diverting or causing to be diverted claims payable by insurance companies owed to the Company.

146.   Plaintiffs were injured as a proximate result of Defendants' conspiracy.

**<u>COUNT EIGHT</u>: PUNITIVE DAMAGES (Spruill and Healix)**

147.   Plaintiffs incorporate by reference Paragraphs 1 through 106.

148.   Defendants conduct was such as to evidence an entire want of care and indifference to the consequences of such conduct.

149.   Plaintiffs show that such conduct amounted to wanton acts by Defendants without regard to the rights of Plaintiffs.

150.   Plaintiffs show that the conduct of Defendants was of such a degree of recklessness as to evince a conscious knowledge of the probable harmful consequences to Plaintiffs, so as to amount to a reckless disregard for their rights and a specific intent to cause harm.

151.   Defendants are guilty of aggravating circumstances as defined by Georgia law, which entitles Plaintiffs to an award of punitive damages to deter Defendants from such conduct in the future, for which Plaintiffs sue Defendants.

## COUNT NINE: ATTORNEY'S FEES AND COSTS

152.   Plaintiffs incorporate by reference Paragraphs 1 through 106.

153.   As set forth above, Defendants breached their fiduciary duties and engaged in a conspiracy to defraud Plaintiffs. Accordingly, Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expenses.

154.   Plaintiffs are thus entitled to a recovery of attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## PRAYER

WHEREFORE, Plaintiffs respectfully request:

(A)   That summons and process issue and be served upon Defendants as provided by law;

(B)     For a trial by a jury comprised of twelve (12) persons;

(C)     For judgment in favor of Plaintiffs and against Defendants;

(D)     That Defendants be held jointly and severally liable for Plaintiffs' damages which were suffered as a result of Defendants' wrongful and tortious acts;

(E)     That Plaintiffs be awarded all damages allowed by Georgia law;

(G)     That Plaintiffs be awarded attorneys' fees and expenses of litigation, as provided by O.C.G.A. § 13-6-11.

(I)     That Plaintiffs be awarded punitive damages; and

(J)     That Plaintiffs have such other relief as this Court deems just and proper.

Respectfully submitted this 2nd day of September 2022.

GRIFFIN DURHAM TANNER & CLARKSON LLC

*/s/ J. Thomas Clarkson*
J. Thomas Clarkson (Georgia Bar No. 656069)
75 14th Street NE, Suite 2130
Atlanta, GA 30309
Phone: (203) 240-0208
Fax:  (404) 891-9150
Email:  tclarkson@griffindurham.com

***Counsel for Plaintiffs***